IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES GRISSO,<br><br>                Petitioner,<br><br>     vs.<br><br>STEVE MOORE, Acting Warden, Deuel Vocational Institute,<br><br>                Respondent. | No. 2:06-cv-00865-TMB<br><br>MEMORANDUM DECISION |

     Petitioner James Grisso, a state prisoner appearing through counsel, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254. Grisso is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at Deuel Vocational Institute. Respondent has answered and Grisso has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

     In July 1978 Grisso was convicted upon a guilty plea of murder in the first-degree in the Butte County Superior Court. The trial court sentenced Grisso to an indeterminate prison term of seven years to life. Grisso does not challenge his conviction or sentence in these proceedings.

     In February 2004 Grisso appeared at a parole suitability hearing before the Board of Prison Terms, which granted him parole. In June 2004 the Governor reversed the decision of the Board. Grisso timely filed a petition for habeas corpus relief in the Butte County Superior Court, which denied his petition in an unreported, reasoned decision. Grisso's subsequent petition for habeas relief was summarily denied by the California Court of Appeal, Third District, without

opinion or citation to authority. The California Supreme Court summarily denied review without opinion or citation to authority on March 26, 2006. Grisso timely filed his petition for relief in this court on April 24, 2006.

After the pleadings were complete and the issues joined, this Court stayed further proceedings in this action pending decision by the en banc panel of the United States Court of Appeals for the Ninth Circuit in *Hayward*.[1] The Ninth Circuit has issued its en banc opinion in *Hayward*;[2] therefore, the Court terminates the stay and decides the case.

## II.  GROUNDS RAISED/DEFENSES

Grisso raises eight grounds: (1) the Governor's finding that Grisso was unsuitable for parole is unsupported by sufficient evidence in the record; (2) denial of parole based upon the unchanging factor of the nature of the underlying commitment offense is contrary to Board regulations; (3) other grounds for determining unsuitability were unsupported by evidence; (4) the Governor's use of the underlying commitment offense and other outdated static factors rendered the Governor's decision arbitrary; (5) a finding of "some evidence" of unsuitability upon less than a preponderance of the evidence violates due process; (6) the gubernatorial review process denied Grisso his due process right of individualized review; (7) the 'some evidence" standard does not apply to the parole process; and (8) the governor's reversal breached the plea agreement and violated the *Ex Post Facto* Clause of the United States Constitution. Respondent contends that Grisso's fifth ground, preponderance of the evidence claim, is unexhausted and that the petition should be dismissed for lack of subject matter jurisdiction, *i.e.*,

---

[1] *Hayward v. Marshall*, 512 F.3d 536, *rehrg en banc granted*, 527 F.3d 797 (9th Cir. 2008).

[2] *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc).

presents no federal constitutional claim.  Respondent further contends that Grisso's eighth ground is untimely.  Respondent raises no other affirmative defense.[3]

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the

---

[3] *See* Rules—Section 2254 Cases, Rule 5(b).

[4] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412.

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

"unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[8] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[9] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[10] In a federal habeas proceeding, the standard under which this court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[11] Because state court judgments carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

In applying this standard, this Court reviews the last reasoned decision by the state court.[13] Under AEDPA, the state court's findings of fact are presumed to be correct unless the

---

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[13] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

petitioner rebuts this presumption by clear and convincing evidence.[14]  This presumption applies to state trial courts and appellate courts alike.[15]

## IV.  DISCUSSION

**A.      Exhaustion**.

Respondent argues that Grisso's fifth ground, that the Governor's finding of unsuitability for parole is unsupported by a preponderance of the evidence was not presented to the state courts and is, therefore, unexhausted.  This court may not consider claims that have not been fairly presented to the state courts.[16]  In order to exhaust a claim, a petitioner must "fairly present" to the state supreme court both the legal and factual basis for the claim.[17]  "[T]he petitioner must . . . provide the state court with the operative facts, that is, 'all of the facts necessary to give application to the constitutional principle upon which [the petitioner] relies.'"[18]  This court also notes that it may deny a habeas claim on the merits the failure to exhaust notwithstanding,[19] when it is clear that the petition does not raise a colorable federal claim.[20]  As discussed in subpart C, below, Grisso's fifth ground must be denied on the merits.  Thus, the court declines to dismiss for the failure to exhaust the fifth ground.

---

[14] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[15] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[16] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[17] *Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); *Robinson v. Schriro,* 595 F.3d F.3d 1086, 1101 (9th Cir. 2010).

[18] *Davis v. Silva,* 511 F.3d 1005, 1009 (9th Cir.2008) (emphasis added) (quoting *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir.1958)).

[19] 28 U.S.C. § 2254(b)(2).

[20] *Cassett v. Stewart,* 406 F.3d 614, 624 (9th Cir.2005).

**B.     Subject Matter Jurisdiction.**

Respondents claim that this court lacks subject matter jurisdiction is likewise rejected. That argument is foreclosed by the Ninth Circuit's en banc decision in *Hayward*.[21]

**C.     Merits.**

Grisso's first seven grounds all address a common theme—the quantum and nature of the evidence supporting the Governor's finding that Grisso was unsuitable for parole. Consequently, the court conflates and addresses those seven issues in a single discussion.

<u>Grounds 1 – 7:  Quantum and Nature of Evidence</u>.

Grisso argues that the Governor's finding that Grisso is unsuitable for parole is unsupported by any evidence whatsoever (Ground 1); the reversal by the Governor based upon the unchanging nature of the underlying commitment offense violates due process because he has been imprisoned for two and one-half times as long as the maximum term prescribed by Board regulations (Ground 2); to the extent the Governor's determination was based upon Grisso's disciplinary record, lack of acceptance of responsibility, and other factors they are unsupported by evidence in the record (Ground 3); the reliance on the commitment offense and other outdated static factors without articulating a nexus between those factors and Grisso's current parole risk renders the Governor's decision arbitrary (Ground 4); was unsupported by a preponderance of the evidence (Ground 5); the Governor does not personally review the decision of the Board as required by statute and the State constitution (Ground 6); and that the mere "some evidence" standard of *Hill*[22] is inapplicable (Ground 7).

---

[21] *Hayward*, 603 F.3d at 558–59.

[22] *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

The Butte County Superior Court rejected Grisso's arguments, holding:

> The Governor's decision finding the inmate unsuitable for parole was based on some evidence, consisting primarily of the circumstances of the offense. The Governor gave individualized consideration of all factors bearing on suitability for release, and exercised the discretion he retained in reading the determination to deny release. The fact that a judge or a member of the Board of Prison Terms might disagree with that result is of no importance if it is based on some evidence, and the record shows all the relevant factors were acknowledged and considered. Such is the narrow scope of review in this situation. In re Rosenkrantz 29 Cal. 4th 616 (2002); In re Dannenberg, 34 Cal. 4th 1061 (2005).[23]

Initially, the court notes that Grisso's second and sixth grounds are essentially grounded on the proper interpretation and application of state law beyond the purview of this court in a federal habeas petition. It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[24] A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[25] A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[26] "[A]bsent a specific constitutional violation, federal habeas corpus review of [state court proceedings] is limited to whether the error 'so infected the [proceeding] with

---

[23] Docket No. 7-11.

[24] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[25] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law. . . .").

[26] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

unfairness as to make the result[] . . . a denial of due process.'"[27]  "'Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.'"[28]

The court further notes that in his fourth ground, Grisso relies upon two decisions of the Tenth Circuit addressing actions by the U.S. Parole Commission.  Federal habeas review is limited to federal law as determined by the Supreme Court of the United States,[29] not decisions of the circuit courts construing the proper interpretation of federal statutes in federal cases.  Also, Grisso's fifth and seventh grounds, that the decision must be supported by a preponderance of the evidence, not just "some evidence," are foreclosed by the en banc decision in *Hayward*.[30]

In this case, this court "need only decide whether the California judicial decision approving the Governor's decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or 'was based on an unreasonable determination of the facts in light of the evidence.'"[31]  Consequently, this court must canvas and apply California law to the facts in the record.  Under California law "some evidence" of future dangerousness is a *sine qua non* for denial of parole.[32]  As the Ninth Circuit noted:

---

[27] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[28] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

[29] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404–06, 412; *Andrade,* 538 U.S. at 70–75.

[30] *Hayward*, 603 F.3d at 558–59.

[31] *Hayward*, 603 F.3d at 563 (footnotes citing 28 U.S.C. § 2254(d) omitted).

[32] *In re Lawrence*, 190 P.3d 535, 549 (Cal. 2008); *In re Shaputis*, 190 P.3d 573, 582 (Cal. 2008).

      As a matter of California law, "the paramount consideration for both the Board [of Prison Terms] and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." (Footnote omitted)  There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety." (Footnote omitted).  The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre or post-incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness.  (Footnote omitted.)  Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety." (Footnote omitted.)[33]

Under California law, a parole release date must be set "unless [the Governor] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the *public safety* requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed . . . ."[34]  "The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole."[35]  The Governor on review must, however, "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released.[36]  The Governor "may credit evidence suggesting the inmate committed a greater degree of the offense than his or her conviction evidences."[37]  "[T]he statutory and regulatory mandate to normally grant parole to life prisoners who have committed murder means that, particularly after these

---

[33] *Hayward*, 603 F.3d at 562 (omitted footnotes are pinpoint citations to *Lawrence*) (internal alteration in the original).

[34] Cal. Penal Code § 3041(b) (emphasis added); *Lawrence*, 190 P.3d at 546; *see Rosenkrantz*, 59 P.3d at 202-03.

[35] *In re Rosenkrantz*, 59 P.3d 174, 222 (Cal. 2002).

[36] *In re Dannenberg,* 104 P.3d 783, 786-87, 802-803 (Cal. 2005); *see Rosenkrantz*.

[37] *Dannenberg*, 104 P.3d at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

prisoners have served their suggested base terms, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole when there is strong evidence of rehabilitation and no other evidence of current dangerousness."[38]  Where, however, the record also contains evidence of other factors relevant to showing unsuitability for parole, the aggravating circumstances of the crime reliably may continue to predict current dangerousness even after many years of incarceration.[39]

The California Supreme Court has provided substantial guidance on the factors to be considered in applying these general principles.

> Title 15, section 2402 of the California Code of Regulations sets forth the factors to be considered by the Board in carrying out the mandate of the statutes.[FN13]  This regulation is designed to guide the Board's assessment of whether the inmate poses "an unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. (Regs., § 2402, subd. (a).)[FN14]  The regulation also lists several circumstances relating to unsuitability for parole[FN15]—such as the heinous, atrocious, or cruel nature of the crime, or an unstable social background; and several circumstances relating to *suitability* for parole—such as an inmate's rehabilitative efforts, demonstration of remorse, and the mitigating circumstances of the crime.[FN16]  (Regs., § 2402, subds. (c), (d).)  Finally, the regulation explains that the foregoing circumstances "are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." (Regs., § 2402, subds. (c), (d).)  The Governor's power to review a decision of the Board is set forth in article V, section 8, subdivision (b) of the California Constitution.[FN17]
>
> > [FN13.] Petitioner's parole suitability is governed by Title 15, section 2402, which we addressed in *Rosenkrantz, supra,* 29 Cal.4th 616, 128 Cal.Rptr.2d 104, 59 P.3d 174—a discussion excerpted in substantial part below.  In the companion case of *Lawrence, supra,* 44 Cal.4th 1181, 82 Cal.Rptr.3d 169, 190 P.3d 535, the inmate's parole suitability is governed by Title 15, section 2281, which provides parole consideration criteria and

---

[38] *Lawrence*, 190 P.3d at 553.

[39] *See Shaputis*, 190 P.3d at 584-85.

guidelines for murders committed prior to November 8, 1978. The two sections are identical.

FN14. These factors include "the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." (Regs., § 2402, subd. (b).)

FN15. Unsuitability factors are: (1) a commitment offense carried out in an "especially heinous, atrocious or cruel manner"; (2) a "[p]revious [r]ecord of [v]iolence"; (3) "a history of unstable or tumultuous relationships with others"; (4) "[s]adistic [s]exual [o]ffenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6) "[t]he prisoner has engaged in serious misconduct in prison or jail." (Regs., § 2402, subd. (c)(1)-(6).) This subdivision further provides that "the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." (Regs., § 2402, subd. (c).)

Factors supporting a finding that the inmate committed the offense in an especially heinous, atrocious, or cruel manner include the following: (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled, or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense. (Regs., § 2402, subd. (c)(1).)

FN16. Suitability factors are: (1) the absence of a juvenile record; (2) "reasonably stable relationships with others"; (3) signs of remorse; (4) a crime committed "as the result of significant stress in [the prisoner's] life"; (5) battered woman syndrome; (6) the lack of "any significant history of violent crime"; (7) "[t]he prisoner's present age reduces the probability of recidivism"; (8) "[t]he prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release"; and (9) the inmate's "[i]nstitutional activities indicate an enhanced ability to function within the law upon release." (Regs., § 2402, subd. (d)(1)-(9).)

> <sup>FN17.</sup> Article V, section 8 subdivision (b) of the California Constitution provides in full: "No decision of the parole authority of this State with respect to the granting, denial, revocation, or suspension of parole of a person sentenced to an indeterminate term upon conviction of murder shall become effective for a period of 30 days, during which the Governor may review the decision subject to procedures provided by statute. The Governor may only affirm, modify, or reverse the decision of the parole authority on the basis of the same factors which the parole authority is required to consider. The Governor shall report to the Legislature each parole decision affirmed, modified, or reversed, stating the pertinent facts and reasons for the action."
>
> The statutory procedures governing the Governor's review of a parole decision pursuant to article V, section 8 subdivision (b), are set forth in Penal Code section 3041.2, which states: "(a) During the 30 days following the granting, denial, revocation, or suspension by a parole authority of the parole of a person sentenced to an indeterminate prison term based upon a conviction of murder, the Governor, when reviewing the authority's decision pursuant to subdivision (b) of Section 8 of Article V of the Constitution, shall review materials provided by the parole authority. [¶] (b) If the Governor decides to reverse or modify a parole decision of a parole authority pursuant to subdivision (b) of Section 8 of Article V of the Constitution, he or she shall send a written statement to the inmate specifying the reasons for his or her decision."

"[T]he governing statute provides that the Board *must* grant parole *unless* it determines that *public safety* requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction. (Pen.Code, § 3041, subd. (b).) And as set forth in the governing regulations, the Board must set a parole date for a prisoner unless it finds, in the exercise of its judgment after considering the circumstances enumerated in section 2402 of the regulations, that the prisoner is unsuitable for parole. Accordingly, parole applicants in this state have an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation." (*Rosenkrantz, supra,* 29 Cal.4th at p. 654, 128 Cal.Rptr.2d 104, 59 P.3d 174, Italics added.)

The Governor is subject to the same standards as those that apply to the Board. As we stated in *Rosenkrantz, supra,* 29 Cal.4th 616, 128 Cal.Rptr.2d 104, 59 P.3d 174, the Governor's interpretation of a documentary record is entitled to deference. (*Id.* at p. 677, 128 Cal.Rptr.2d 104, 59 P.3d 174.) Although "the Governor's decision must be based upon the same factors that restrict the Board in rendering its parole decision" (*Rosenkrantz, supra,* 29 Cal.4th at p. 660, 128 Cal.Rptr.2d 104, 59 P.3d 174), the Governor undertakes an independent, de novo review of the inmate's suitability for parole. (*Ibid.*) Accordingly, the Governor has discretion to be "more stringent or cautious" in determining whether a

defendant poses an unreasonable risk to public safety. (*Id.* at p. 686, 128 Cal.Rptr.2d 104, 59 P.3d 174.)  When a court reviews the record for some evidence supporting the Governor's conclusion that a petitioner currently poses an unreasonable risk to public safety, it will affirm the Governor's interpretation of the evidence so long as that interpretation is reasonable and reflects due consideration of all relevant statutory factors.  (*Rosenkrantz, supra,* 29 Cal.4th at pp. 656-658, 660-661, 128 Cal.Rptr.2d 104, 59 P.3d 174.)[40]

"[T]he precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the Governor . . . .  It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole.  As long as the Governor's decision reflects *due consideration of the specified factors* as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the Governor's decision."[41]

This court does not re-weigh the evidence or substitute it's discretion for that of the Board.  Under California law, judicial review of a decision denying parole is "extremely deferential."[42]  It is through this doubly deferential lens that this court reviews the decision of the Butte County Superior Court.  Based upon the record before it, applying *Rosenkrantz, Dannenberg, Lawrence* and *Shaputis*, this court cannot say that the decision of the Butte County Superior Court affirming denial of parole on the basis that it was supported by "some evidence"was contrary to, or involved an unreasonable application of California law or was based on an unreasonable determination of the facts in light of the evidence.  Grisso is not entitled to relief under his first, second, third, fourth, fifth, sixth, or seventh grounds.

---

[40] *Shaputis*, 190 P.3d at 582-83 (emphasis in the original).

[41] *Shaputis*, 190 P.3d at 585 (emphasis in the original) (quoting *Rosenkrantz*, 59 P.3d at 218).

[42] *Rosenkrantz*, 59 P.3d at 210.

Ground 8:  Breach of Plea Agreement/*Ex Post Facto* Violation.

Grisso argues that the Governor's reversal of the Board's grant of parole constituted a material breach of his plea agreement and violated the *Ex Post Facto* Clause of the U.S. Constitution.  Grisso's argument is predicated upon the fact that the provision providing for gubernatorial review was not adopted until 1988, some 10 years after Grisso entered his plea.  Respondent contends this claim is time-barred because Grisso, through the exercise of due diligence,[43] could have discovered the factual predicate for his claim either in 1987 when Grisso contends he should have granted parole or in 1988, when the California constitution was amended adding the requirement for gubernatorial review.  Thus, Respondent argues, Grisso's claim was time barred one year after the effective date of AEDPA, April 24, 1997, some nine years before his petition was filed.  This contention is meritless, if not frivolous.  Until the Governor actually exercised his powers under the 1988 amendment to the California constitution, Grisso was not held "in custody in violation of the Constitution or laws or treaties of the United States,"[44] nor had he suffered an injury in fact necessary to the exercise of jurisdiction as a matter of constitutional standing.[45]

Grisso argues that at the time he entered his guilty plea, he contracted for a specific sentence, the length of which would be determined solely by the Board.  Grisso contends that the

---

[43] *See* 28 U.S.C. 2244(d)(2)(D).

[44] 28 U.S.C. § 2254(a).

[45] *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561 (1992) (in order to have standing to bring an action a person must show: (1) it has suffered an injury in fact that is concrete and particularized and is actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision).

provision providing for gubernatorial review and reversal of Board findings of suitability for parole, which did not exist at the time Grisso entered his guilty plea, breached this contractual agreement.  This issue was neither presented to nor addressed by the Sacramento County Superior Court.  The issue was, however, presented to the California Court of Appeal, Third Appellate District and the California Supreme Court in Grisso's petition for review.  Neither state court addressed the issue in a reasoned decision.  Thus, this Court must assume that the state courts decided the issue presented to them and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[46]  The scope of this review is for clear error,[47] giving due deference to the state court's ultimate decision.[48]

      That a plea agreement is a contract that must be honored by the state is well settled.[49]  In this case, however, Grisso reads his "contract" too broadly.  The proper interpretation and effect of the agreement between the State of California and Grisso in this case is a matter governed by California contract law.[50]  What Grisso received in exchange for his guilty plea was a sentence of seven years to life, with a possibility of parole at some point after he had served his minimum term.  Although the plea colloquy is not included in the record before this court, Grisso does not allege that there was any promise, actual or implied, of when or under what terms or conditions he might be given parole, or, for that matter, that he would be granted parole at all at any time.

---

[46] *Reynoso*, 462 F.3d at 1109; *Pham*, 400 F.3d at 742 (9th Cir. 2005).

[47] *Delgado II*, 223 F.3d at 982.

[48] *Pirtle*, 313 F.3d at 1167.

[49] *See Santobello v. New York*, 404 U.S. 257, 262–63 (1971).

[50] *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987).

Nor does Grisso argue that any such agreement, if one did exist, which is doubtful,[51] would be enforceable under California law.

In *Garner*, the Supreme Court made clear that retroactive changes to a state's parole laws may, in some instances, be violative of the *Ex Post Facto* Clause.[52] In order to establish an *ex post facto* violation based on a state's retroactive application of a parole statute, a prisoner must demonstrate that the new statute "creates a significant risk of prolonging [the prisoner's] incarceration."[53] Where, however, a change in the law that does nothing more than alter the method of granting parole under identical substantive standards does not implicate the *Ex Post Facto Clause*.[54] In *Rosenkrantz*, the California Supreme Court, in rejecting an *ex post facto* challenge to the application of the 1968 amendment to the California constitution, held:

> Furthermore, article V, section 8(b), did not make any changes in the substantive standard that governs the determination of petitioner's suitability for parole; indeed, article V, section 8(b), explicitly provides that the Governor, in reviewing the parole board's decision, is to apply *the same factors as the Board*. The only change effected by article V, section 8(b), is the institution of an additional level of discretionary review of the Board's decision granting or denying parole, resulting merely in a change in the identity of the entity or official within the executive branch that may make the ultimate decision on parole. Prior to the adoption of article V, section 8(b), the only reasonable expectation that an individual in petitioner's position would have had with regard to punishment was that he or she would receive a sentence of 15 years to life imprisonment and that,

---

[51] *See In re Lowe*, 31 Cal. Rptr.3d 1, 13 (Cal. App. 2005) (holding that when a defendant enters a guilty plea, he has no reasonable expectation regarding the identity of the person or persons who would exercise discretion in evaluating his suitability for parole, or that the person or persons would not change over time, citing *Rosenkrantz*, 59 P.3d at 193).

[52] *Garner*, 529 U.S. 244, 250 (2000) (citing *Lynce v. Mathis*, 519 U.S. 433, 445–46 (1997)).

[53] *Id.*

[54] *See California Dept. of Corrections v. Morales*, 514 U.S. 499, 507–08 (1995) (holding that a change allowing the Board to increase the time between reviews did not violate the *Ex Post Facto* Clause).

after serving the minimum term, he or she would be entitled to have a public official exercise discretion with regard to his or her suitability for parole under then existing standards. Such an individual in petitioner's position had no reasonable expectation regarding the identity of the person or persons who would exercise discretion in evaluating his or her suitability for parole, or that the person or persons who would make such a decision would not change over time. Accordingly, under the ordinary meaning of the controlling language in *Collins,* it appears clear that the application of the procedure set forth in article V, section 8(b), to an individual who committed a criminal offense prior to its enactment does not *increase the punishment* for such crime.[55]

*Ex post facto* analysis of a facially neutral parole law requires a case-specific, fact-intensive analysis regarding the risk posed by the law to the particular prisoner challenging its application.[56] The Supreme Court has also noted that the possibility of immediate release is largely "theoretical" in that in many cases a prisoner's release date comes at least several years after a finding of suitability.[57] Thus, the question before this court is whether the decision of the California Supreme Court upholding the denial of parole by the Governor in the face of an *ex post facto* challenge was contrary to, or involved an unreasonable application of *Garner* and *Morales*, or constituted an unreasonable determination of the facts in light of the evidence presented to it.

On the record before it, this court cannot say that the assumed decision of the California Court of Appeal, Third Appellate District or the California Supreme Court upholding the Governor's reversal of Grisso's parole in the face of a challenge that it violated his plea agreement or violated the *Ex Post Facto* Clause was "contrary to, or involved an unreasonable

---

[55] *Rosenkrantz*, 59 P.3d at 193 (emphasis in the original). The cite to *Collins* refers to *Collins v. Youngblood*, 497 U.S. 37 (1990).

[56] *See, e.g., Garner*, 529 U.S. at 250 (prisoner "must show that as applied to *his own* sentence the law created a significant risk of increasing his punishment") (emphasis added).

[57] *Morales*, 514 U.S. at 513 (citing a finding by the California Supreme Court).

application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[58]  Grisso is not entitled to relief under his eighth ground.

## V.  CONCLUSION AND ORDER

Grisso is not entitled to relief under any ground raised in the petition.  Accordingly,

**IT IS ORDERED THAT** the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability.[59]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  See Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court to enter final judgment accordingly.

Dated: June 17, 2010.

s/ Timothy M. Burgess
TIMOTHY M. BURGESS
United States District Judge

---

[58] 28 U.S.C. § 2254(d).

[59] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.*, when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).